UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| KELLY J. HELLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 1:17cv313 |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), as provided for in the Social Security Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for DIB must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an

impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2. The claimant has not engaged in substantial gainful activity throughout the period since June 29, 2013, the alleged onset date (20 CFR 404.1571 *et seq* and 416.971 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease; osteoarthritis; moderate hip osteoarthritis; plantar fasciitis; hammer toes; Marfan syndrome; mild obesity; mild chronic obstructive pulmonary disease ("COPD") v. asthma [sic].

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except; the claimant is limited to lifting ten pounds frequently and 20 pounds occasionally. The claimant can carry ten pounds frequently and 20 pounds occasionally. The claimant can occasionally push and pull up to 20 pounds. The claimant can sit, stand, and walk two hours each at a time without interruption, and can sit for four hours in an eight-hour workday and stand and walk two hours each in an eight-hour workday. The claimant can perform occasional overhead reaching and frequent reaching in all other directions. The claimant can occasionally climb ropes, ladders, or scaffolds. The claimant can occasionally kneel, crouch, crawl, and balance, as well as bend and stoop in addition to what is required to sit. The claimant can frequently use ramps and stairs. The claimant is limited to frequent, not constant, fingering, feeling, gripping, and fine manipulation of small objects, such as a pen or paper clip. The claimant is limited to frequent, not constant, gross manipulation and handling, grasping, turning, and gripping of larger objects. The claimant can occasionally use foot controls. The claimant should avoid work within close proximity to open and exposed heights and around hazardous and dangerous machinery, such as machines with open flames or fast moving blades. The claimant is limited from concentrated exposure to excessive airborne particulates, dusts, fumes and gases, and excessive heat, humidity, and cold, such as when working outside or within a sawmill, boiler room, chemical plant, greenhouse, refrigerator, or sewage plant.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on February 21, 1967, and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 29, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13- 27).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on February 6, 2018. On March 15, 2018, the defendant filed a memorandum in support of the Commissioner's decision. Plaintiff has declined to file a reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"?

> (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that Step 5 was the determinative inquiry.

Plaintiff alleged disability beginning June 29, 2013, because of arthritis, a heart condition, Marfans syndrome, foot issues, scoliosis, hip problems, and high blood pressure (Tr. 399-400). She was forty-six years old on her alleged onset date and has a high school education and past work as a waitress (Tr. 395, 400).

Spinal imaging from October 2011 showed minimal scoliosis and mild degenerative changes in the lumbar spine (Tr. 502). Hand x-rays in February 2012 showed possible arachnodactyly, but joint spaces and carpus were normal, and soft tissues were normal without erosions (Tr. 501).

In March 2013, Plaintiff underwent examination with Dr. Bacchus, who noted decreased range of motion in the hips, knees, and cervical and lumbar spine and the presence of hammertoes but otherwise reported a normal examination (Tr. 517-19). Dr. Bacchus opined that Plaintiff could perform a range of medium work with some environmental, postural, and manipulative limitations (Tr. 521-26). In December 2013, Plaintiff underwent examination with Dr. Jan, who also reported a largely normal examination except for range of motion deficits in the cervical and

lumbar spine, knees, hips, and shoulders (Tr. 538-42). In December 2013 and February 2014, the State agency medical consultants reviewed the medical evidence of record and opined that Plaintiff could perform a reduced range of light work (Tr. 25, 167-69, 177-79, 190-91, 200-01).

Testing in January 2014 confirmed well-preserved left ventricular ejection fraction of 60% and mild increase in aortic root size (Tr. 604-05). In September 2014, a pelvic CT scan was normal (Tr. 611). In June 2015, examination documented bilateral hammertoes, and Plaintiff was diagnosed with bilateral foot arthralgia (Tr. 626). Examination the following month showed plantar fasciitis, and podiatrist Dr. Coda referred Plaintiff for surgical correction for hammertoes and suggested that orthotic devices should possibly be prescribed (Tr. 631). In August, Plaintiff met with surgeon Dr. Karr, who noted that x-rays of both feet showed no acute bony changes and no osteoarthritic changes in the midfeet; however, there was a congenital anomaly of the navicular in both feet and Morton's feet present on both sides, resulting in "minimally symptomatic" "claw toes" (Tr. 638). Dr. Karr advised trying orthotics and properly fitting shoes and to return if these did not work (Tr. 21, 639).

September 2015 hip x-rays showed non-progressive moderate osteoarthritic changes (Tr. 733). Examination in September 2015 revealed reduced range of motion in the hips but a negative straight leg raise test; Plaintiff was advised to perform home exercises two or three times per day (Tr. 685-87). Also in September 2015, Plaintiff visited the emergency room with shortness of breath, but her lungs were clear, cardiovascular examination was normal, chest imaging was negative, and the emergency room physician noted "no problems related to Marfan's" (Tr. 727-28, 730).

In October 2015, an echocardiogram confirmed ejection fraction still at 60% and

improved aortic root size of 3.9 (Tr. 653). In November 2015, Plaintiff had no abnormal musculoskeletal findings on examination (Tr. 670-71). In January 2016, Plaintiff consulted with a cardiologist, and ejection fraction was now more than 70%, with normal examination (Tr. 704-05).

In support of remand, Plaintiff first argues that the ALJ used "prohibitive boilerplate" and "backward analysis." Plaintiff is concerned with the ALJ's statement that:

> After careful consideration of the evidence, the undersigned finds that the claimant's allegations concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. The allegations are consistent with the record in so far as they are reflected in the residual functional capacity.

(Tr. 30).

Plaintiff cites to *Brent v. Astrue*, 879 F. Supp. 2d 941, 952 (N.D. Ill 2012), where the court noted that "[t]he ALJ's statement that Claimant's symptoms 'are not credible to the extent they are inconsistent with the [RFC] assessment for the reasons explained above" comes dangerously close to falling in the ambit of the backwards analysis described by the Seventh Circuit." However, in *Martinez v. Astrue*, 630 F.3d 693 (7th Cir. 2011), also cited by Plaintiff, the Seventh Circuit faulted ALJs who recite boilerplate language "yet fail to indicate which statements are not credible".

As the Commissioner points out "the simple fact that an ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if he otherwise points to information that justifies his credibility determination." *Pepper v. Colvin*, 712 F.3d 351, 367-68 (7th Cir. 2013); *see also Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012) ("If the ALJ

has otherwise explained his conclusion adequately, the inclusion of this language can be harmless"); *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012) (although the "decision also contains a considerable amount of boilerplate language and recitations . . . the ALJ adequately evaluated Shideler's credibility, and we see no reason to reverse").

"An ALJ is in the best position to determine a witness's truthfulness and forthrightness; thus, this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004); *see also Summers*, 864 F.3d at 528 (reiterating "patently wrong" standard). The ALJ's finding in this case was sufficiently articulated and supported by substantial evidence (Tr. 19-25). The regulations and Social Security Ruling (SSR) 16-3p, 2016 WL 1119029 (S.S.A. 2016), set forth the Agency's policy for evaluating a claimant's subjective complaints.

In the present case, the ALJ recounted Plaintiff's testimony in detail but found that the limitations alleged were not fully credible (Tr. 19-20). In so finding, the ALJ compared Plaintiff's allegations to the objective evidence and her history of conservative treatment (Tr. 20-22). These considerations were appropriate, as the regulations and SSR 16-3p expressly contemplate that an ALJ will compare a claimant's subjective allegations to the objective evidence and the treatment received. *See* 20 C.F.R. §§ 404.1529(c)(2), (3)(v), 416.929(c)(2),(3)(v); SSR 16-3p, 2016 WL 1119029, at *4-5, *7. The ALJ ultimately concluded that the RFC finding was "generous in light of the objective medical evidence, and it gives some deference to [Plaintiff's] allegations" – that is, the ALJ gave Plaintiff the benefit of the doubt in restricting her to a highly limited range of light work (Tr. 20). Thus, this court finds no error in the ALJ's analysis.

Next, Plaintiff argues that the ALJ erred in not incorporating limitations from all the

medically determinable impairments, both severe and non-severe, into the RFC, and in not considering the combined impact thereof.

As noted above, the ALJ found Plaintiff could perform a reduced range of light work, with a variety of detailed functional limitations (Tr. 18-19). The ALJ began by considering evidence bearing on Plaintiff's cardiological symptoms connected to Marfan syndrome (Tr. 20-21). The ALJ noted that Plaintiff reported feeling okay in December 2013, and examination at that time was normal, with no edema present (Tr. 20, 598). Testing in January 2014 confirmed well-preserved left ventricular ejection fraction of 60% and mild increase in aortic root size (Tr. 20, 604-05). Follow-up on January 17, 2014 was also benign (Tr. 20, 596). In September 2015, Plaintiff visited the emergency room with shortness of breath, but her lungs were clear, cardiovascular examination was normal, chest imaging was negative, and the emergency room physician noted "no problems related to Marfan's" (Tr. 21, 727-28, 730). In October 2015, Plaintiff again reported doing well, with negative examination (Tr. 20, 649). An echocardiogram confirmed ejection fraction still at 60% and improved aortic root size of 3.9 (Tr. 20, 653). Plaintiff denied symptoms at her next appointment and did not appear at a follow-up in April 2016 (Tr. 20, 646, 648). In January 2016, Plaintiff consulted with a cardiologist, and ejection fraction was now more than 70%, with normal examination (Tr. 20, 704-05).

The ALJ next considered evidence bearing on Plaintiff's feet. On examination in March 2013, Plaintiff had hammertoes on both feet, but her gait and station were steady (Tr. 21, 518). In June 2015, examination documented bilateral hammertoes, and Plaintiff was diagnosed with bilateral foot arthralgia (Tr. 21, 626). Examination the following month showed plantar fasciitis, and podiatrist Dr. Coda referred Plaintiff for surgical correction for hammertoes and suggested

9

that orthotic devices should possibly be prescribed (Tr. 21, 631). In August, Plaintiff met with surgeon Dr. Karr, who noted that x-rays of both feet showed no acute bony changes and no osteoarthritic changes in the midfeet; however, there was a congenital anomaly of the navicular in both feet and Morton's feet present on both sides, resulting in "minimally symptomatic" "claw toes" (Tr. 21, 638). Dr. Karr advised trying orthotics and properly fitting shoes and to return if these did not work (Tr. 21, 639). Plaintiff did not see Dr. Karr again, and she did not report foot pain in subsequent primary care notes (Tr. 21, 660-74).

Next, the ALJ considered evidence bearing on Plaintiff's other musculoskeletal impairments. Imaging from October 2011 showed minimal scoliosis and mild degenerative changes in the lumbar spine (Tr. 22, 502). Hand x-rays in February 2012 showed possible arachnodactyly, but joint spaces and carpus were normal, and soft tissues were normal without erosions (Tr. 22, 501). In September 2014, a pelvic CT scan was normal, and September 2015 hip x-rays showed non-progressive moderate osteoarthritic changes (Tr. 22, 611, 733). Examination in September 2015 revealed reduced range of motion in the hips but a negative straight leg raise test; Plaintiff was advised to perform home exercises two or three times per day (Tr. 22, 685-87). In November 2015, Plaintiff had no abnormal musculoskeletal findings on examination (Tr. 22, 670-71). The ALJ also noted routinely normal findings regarding Plaintiff's neck from April 20142, September 2015, January 2016, and August 2016 (Tr. 22, 615, 705, 732, 755).

The ALJ further considered medical opinion evidence (Tr. 23-25). The ALJ considered the March 2013 examination of Dr. Bacchus, who noted decreased range of motion in the hips, knees, and cervical and lumbar spine and the presence of hammertoes but otherwise reported a normal examination (Tr. 23, 517-19). Dr. Bacchus opined that Plaintiff could perform a range of

10

medium work with some environmental, postural, and manipulative limitations (Tr. 23, 521-26). The ALJ further considered the December 2013 examination of Dr. Jan, who also reported a largely normal examination except for range of motion deficits in the cervical and lumbar spine, knees, hips, and shoulders (Tr. 23, 538-42). Dr. Jan did not offer a medical opinion as to Plaintiff's functioning and only reported her own statements (Tr. 23, 539). The ALJ also considered the opinions of the State agency medical consultants that Plaintiff could perform a reduced range of light work, but the ALJ found that Dr. Bacchus's report justified a more restrictive RFC than the consultants opined (Tr. 25, 167-69, 177-79, 190-91, 200-01).

In light of the evidence discussed above, this court agrees with the Commissioner that the ALJ's finding is well-supported. The ALJ compared the limitations in the RFC finding to those in Dr. Bacchus's opinion – the only medical opinion issued based on an examination of Plaintiff – and explained any differences from that opinion with citation to the evidence (Tr. 24). The ALJ thus rendered a detailed, well-supported analysis of Plaintiff's limitations.

Plaintiff's only challenge to the ALJ's RFC finding is that the ALJ allegedly did not adequately consider the limiting effects of Plaintiff's hip arthritis and foot problems. Plaintiff contends that a finding that Plaintiff could do light work "runs counter to the medical evidence and logic". However Plaintiff does not cite any evidence in support of this finding. In pertinent part, the ALJ found Plaintiff had severe impairments of osteoarthritis, moderate hip osteoarthritis, plantar fasciitis, and hammer toes (Tr. 13). The ALJ then provided a detailed discussion of the evidence regarding Plaintiff's foot problems (Tr. 21-22) and the evidence regarding her hips (Tr. 22). Plaintiff's argument ignores the voluminous evidence cited in detail by the ALJ showing that Plaintiff could perform a reduced range of light work and does not cite a single piece of

evidence to undermine the ALJ's analysis.  This court finds that the ALJ's RFC finding is well-supported.  As there is no basis for remand, the ALJ's decision will be affirmed.

## Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby AFFIRMED.

Entered: April 30, 2018.

                                          s/ William C.  Lee
                                          William C. Lee, Judge
                                          United States District Court